# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KETTERING COLLEGE, | : | Case No. 3:18-cv-277 |
| | : | |
| Petitioner, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| THE HIGHER LEARNING COMMISSION, | : | |
| | : | |
| Respondent. | : | |

_____

**ENTRY AND ORDER DENYING KETTERING COLLEGE'S PETITION TO COMPEL ARBITRATION (DOC. 1) AND MOTION TO COMPEL ARBITRATION (DOC. 2) AND TERMINATING CASE**
_____

This case is before the Court on the Petition to Compel Arbitration (Doc. 1) and Motion to Compel Arbitration (Doc. 2), both of which seek the same relief, filed by Petitioner Kettering College. Kettering College is a Christian college accredited by Respondent The Higher Learning Commission ("HLC"). According to Kettering College, "accreditation" means two things. First, a college can obtain federal funding for student loans. Second, other accredited schools will accept Kettering College's coursework completion for transfers and graduate schools.

Kettering College has been accredited for 50 years. It claims that HLC threatens to remove its accreditation, however, unless the religious body that owns Kettering College, the North American Division of Seventh-day Adventist Church, divests itself of ownership and control. Kettering College alleges that, pursuant to HLC policy, it will be

required to separately incorporate and install an independent board if it wants to maintain its accreditation.

Kettering College requested an exemption from HLC's policy requiring such measures and asked that HLC arbitrate the issue. HLC has not responded to either request. As a result, Kettering College brought this action to compel HLC to arbitrate the issue under the Federal Arbitration Act. The Court **DENIES** the Petition and Motion because, at this time, there is no case or controversy over which the Court has jurisdiction. Should that fact change, Kettering College may file a new petition.

I. **THE CASE-OR-CONTROVERSY REQUIREMENT**

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)). "[O]ne of the controlling elements in the definition of a case or controversy under Article III" is standing. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989). Federal courts "have an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508 (6th Cir. 2006) (quoting *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977)).

To invoke a federal court's jurisdiction, a plaintiff must demonstrate that it "possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (internal quotes omitted)). The requisite stake is established by

showing (1) the plaintiff "suffered an injury in fact," (2) caused by "the conduct complained of," (3) that "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Symczyk*, 569 U.S. at 71.

In response to Kettering College's Petition, HLC argues that there is no dispute ripe for adjudication because it has excused Kettering College indefinitely from any obligation to comply with its separate incorporation rule. On July 12, 2018, HLC sent a letter to Kettering College's President stating, in pertinent part:

> Dear President Brandstater:
>
> At its meeting on June 28, 2018, the Higher Learning Commission (HLC) Board of Trustees ("the Board") authorized HLC staff to review HLC policy as it relates to the incorporation status of affiliated institutions. The Board took this action following review of materials submitted by affiliated special-focus institutions that are not yet separately incorporated, and after new information became available regarding the status of the proposed bill known as the Making the Education of Nurses Dependable for Schools Act (or "M.E.N.D. Act").
>
> As you are aware, Board policy maintains that affiliated institutions must be incorporated as institutions of higher education in one of the 19 states of the north central region (or operating under federal authority in conjunction with an executive branch or independent federal agency or branch of the U.S. military). In previous correspondence, HLC indicated that affiliated institutions that did not meet this requirement had until December 31, 2019 to come into compliance. This letter serves as formal notification that HLC Board has temporarily suspended this deadline, as outlined below, pending completion of the review.
>
> In taking this action, the Board tasked HLC staff with reviewing the applicable policies that form the basis of the separate incorporation requirement to determine whether an alternative approach to meeting

3

> HLC's requirements for autonomous governance and financial sufficiency exists without undergoing the legal process of separately incorporating. The Board required that HLC staff conduct this review during summer and early fall 2018 and present its findings at the Board's November 2018 meeting. At its November meeting, the Board will make a final determination as to whether to continue maintaining the separate incorporation requirement for already affiliated institutions.
>
> Effective immediately, HLC is suspending the evaluation of all applications for Change of Control, Structure or Organization, that relate exclusively to separate incorporation, pending completion of this review. Applications that have been submitted for consideration at the Board's November 2018 or February 2019 meetings will be treated as withdrawn unless otherwise requested by the institution. Institutions will not be invoiced for applications that are withdrawn in response to this letter.
>
> If it is found that an alternative to separate incorporation for already affiliated institutions exists under HLC policy, you will be notified following the Board's meeting. Alternatively, if the Board determines that affiliated institutions must undergo separate incorporation in order to meet HLC's requirements for autonomous governance and financial sufficiency, then the Board, at its discretion, will set a revised deadline for coming into compliance.
>
> Thank you for your cooperation. . . .

(Doc. 1-5 at PAGEID# 368-69.) As stated in this letter, HLC has not yet made a determination regarding whether or not Kettering College will be required to comply with HLC's separate incorporation policy to maintain its accreditation.

Anticipating the argument that this case is not yet ripe, Kettering College argues that it should not have to wait until HLC "chops off its accreditation ties to challenge its authority to mandate incorporation." (Doc. 2 at 10 n.6 (citing *W. State Univ. of S. Cal. v. ABA*, 301 F.Supp.2d 1129, 1138 (C.D. Cal. Feb. 6, 2004)).) The *ABA* case cited by Kettering College, however, is distinguishable on its facts.

4

In that case, Western State University (the "University") faced certain withdrawal of its ABA accreditation. The ABA Accreditation Committee (the "Committee") had determined that the University should not be granted ABA accreditation. The ABA Council of the Section of Legal Education and Admissions to the Bar (the "Council") concurred in the Committee's determination. The University's appeals to the Committee and Council both failed. Its last resort was to appeal their decisions to the ABA House of Delegates at a meeting to occur within less than two months. If the House of Delegates denied the appeal, then the University would lose its accreditation.

The University brought an action against the ABA alleging that it had violated the Higher Education Act, common law due process, the Administrative Procedures Act, the Fifth Amendment, and the Sherman Antitrust Act. The University also sought a preliminary injunction preventing the ABA House of Delegates from reviewing the decision to withdraw the University's accreditation at its upcoming meeting. The University wanted to maintain the status quo—its ABA accreditation—until its claims could be considered on their merits. The district court determined the University was entitled to a preliminary injunction and entered its decision just three days before the meeting of the ABA House of Delegates.

Here, HLC expressly stated that it is uncertain whether or not institutions like Kettering College will be required to comply with the separate incorporation policy. In addition, HLC informed Kettering College that, if Kettering College were required to comply with the policy, HLC would set a new deadline for it to come into compliance. HLC's previous deadline to comply, which it has suspended, was December 31, 2019—

5

more than a year from the date of this Order. Thus, it may be inferred that any revised deadline will be after December 31, 2019.

In sum, in contrast to the *ABA* case, there has been no final determination that Kettering College does not qualify for accreditation and it is not in imminent danger of losing its accreditation. There is not even a dispute to arbitrate, as HLC has withdrawn from its position that all institutions must comply with the separate incorporation policy. HLC indicated that it plans to reach a final determination on that issue in the near future. If that final determination is adverse to Kettering College, then it might have a dispute subject to arbitration. The Court need not opine on the arbitrability of any such dispute now and may not need to do so in the future unless HLC denies a future request to arbitrate and Kettering College must bring a new petition to compel arbitration.

## II. <u>CONCLUSION</u>

For the reasons above, Kettering College's Petition to Compel Arbitration (Doc. 1) and Motion to Compel Arbitration (Doc. 2) are **DENIED**. This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, November 7, 2018.

s/Thomas M. Rose
———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE